**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

ERGUN M. CANER,

*Plaintiff,*

v.

JONATHAN AUTRY,

*Defendant.*

CASE NO. 6:14-CV-0004

**Plaintiff's Response to Docket #67—*Jonathan Autry's Motion for Attorney Fees***

Comes now, Dr. Ergun Caner, in response to Mr. Autry's *Motion for Attorney Fees*. In Response

to the Defendant's motion, there are two straightforward issues for this Court to consider:

1) A district court should only award attorney's fees in a copyright action when the suit

was 1) frivolous, 2) improperly motivated, 3) objectively unreasonable, or 4) awarding

fees will deter a party from filing similar actions. This is a case involving an author

and speaker seeking to protect *entire* reproductions of his works, and this case was

resolved on a complex judicial determination—fair use. As demonstrated below—this

is not a case where attorney's fees are proper.

2)  Beyond requesting attorney's fees to which the defendant is not entitled, the amount

of fees that the defendant is requesting is unreasonable. A district court maintains

discretion to reduce the fees so they are reasonable under the circumstances. Mr.

Autry's attorney, his brother, charged him no fees for his services, has worked with

another attorney on this matter, and has still invoiced over $29,0000 in legal fees for

this case—an unreasonable amount for a case that resolved at this early stage in the litigation process.

**A.    Attorney Fees Should Not Be Awarded in This Case Because It Is Not Frivolous, Improperly Motivated, Objectively Unreasonable, and Awarding Fees Will Frustrate the purposes of the Copyright Act.**

In a suit for copyright infringement, a court may award attorney's fees to the prevailing party, but recovery of attorney's fees is not automatic. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994); *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.,* 74 F.3d 488, 498 (4th Cir.1996) (noting that "attorney's fees are not to be awarded as a matter of course under 17 U.S.C. § 505"). Since awarding attorney's fees is not automatic, the Copyright Act instructs district courts to use discretion when deciding whether to grant motions for attorney's fee awards. *See* 17 U.S.C. § 505 (2012) ("[T]he court in its discretion may allow the recovery of full costs . . . . the court may also award a reasonable attorney's fee to the prevailing party . . . ."). The Fourth Circuit's approach to attorney's fees does not in any way indicate that fees should be given by default to the prevailing party. *Fogerty*, 510 U.S. at 534. In *Fogerty*, the Supreme Court left the determination for attorney's fees in the district courts' discretion and stated that "there is no precise rule or formula" for making a determination for awarding fees. *Id.* The court did elaborate and provided a list of non-exclusive factors so that "equitable discretion [can] be exercised" when making the determination.[1] *Id.* In the Fourth Circuit, and nearly all other circuits, a non-exclusive list of factors has been adopted to aid a district court to discern whether an award of attorney's fees is appropriate. *See, e.g.*, *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 505 (4th Cir. 1996); *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 380–

---

[1] These factors are listed in the Supreme Court's *Fogerty* decision and are derived from the Third Circuit. *See Lieb v. Topstone, Inc.*, 788 F.2d 151, 156 (3d Cir. 1986).

81 (5th Cir. 2004) (denying attorney fees); *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 817

(5th Cir. 1997) (denying attorney's fees) (All noting factors such as frivolousness, 2) motivation,

3) objective unreasonableness (both in the factual and legal components of the case), and 4) the

need in particular circumstances to advance considerations of compensation and deterrence.)

> **1. Attorney's fees should not be awarded because the factual and legal components of this case are not objectively unreasonable and were not brought with an improper motive.**

This is a case that turned on a complex question of law and fact; specifically, whether Mr.

Autry's use of Dr. Caner's entire video presentation was fair use under the copyright act. The

Supreme Court and many federal Circuit Courts of Appeal have described the question of fair

use as "the most troublesome in the whole law of copyright." *See Sony Corp. v. Universal City*

*Studios, Inc.*, 464 U.S. 417, 476 (1984); *Triangle Pub., Inc. v. Knight-Ridder Newspapers, Inc.*, 626

F.2d 1171, 1174 (5th Cir. 1980). Describing fair use, the *Triangle* court went on to say that "no

definition of fair use that is workable in every case has ever evolved, a frequently quoted

definition of fair use is 'a privilege in others than the owner of a copyright to use the copyrighted

material in a reasonable manner without his consent, notwithstanding the monopoly granted to

the owner (by the copyright).'" *Id.* at 1174. Further, Congress itself has elaborated on the

important roles that the district courts have in deciding fair use: "Since the doctrine is an

equitable rule of reason, no generally applicable definition is possible, and each case raising the

question must be decided on its own facts." House Report, at 65, U.S. Code Cong. & Admin.

News 1976, p. 5678. The fact this case turned on a fair use determination is instructive with

regard to the objective reasonableness of this case as it raised a complex issue of law; Dr. Caner

had his "day in court" and the Court ruled on the side of fair use.

Also, the fact this case was resolved on a motion to dismiss does not dictate that this case was objectively unreasonable. *See Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg. LLC*, 2012 WL 48027 at *8 (E.D. Va. 2012) (denying attorney fee award). The Eastern District of Virginia's case of *Charles W. Ross Builder, Inc.* cites the Fifth Circuit's case of *Positive Black Talk, Inc. v. Cash money Records, Inc.*, 394 F.3d 357 n. 23 (5th Cir. 2004) (denying attorney fee award), where the Fifth Circuit discussed the issue of determining whether a case is objectively unreasonable based upon its disposition. The court said that adopting a *per se* rule of declaring a case objectively unreasonable—based upon its early disposition—would automatically "transform the discretionary rule into the clearly rejected British Rule, under which the prevailing defendant always recovers fees. In order for the rule to remain discretionary rather than mandatory, a district court must be able, under certain circumstances, to refuse to award fees." *Id.*; *Fogerty*, 510 U.S. at 533. Here, Dr. Caner respectfully asks this Court to refuse to award fees on a case where 1) Dr. Caner's entire works were used and 2) where the Court decided the case on the complex—and exclusively judicial—determination of fair use.

This suit was brought with proper motivation—to protect the unwarranted publication of Dr. Caner's lecture materials. Dr. Caner did not bring this suit solely to suppress criticism, but to protect what he believed to be a valid and enforceable copyright. As stated in his affidavit, Dr. Caner frequently travels to lecture on the topics that are covered in the videos that he was seeking to protect and keep off of the Internet because he believed it to be his intellectual property. *See* Exhibit 1—Attached. As stated in both the Original and Amended Complaints, Dr. Caner was not seeking any monetary damages; he was merely seeking the removal of the videos from the Internet. Dr. Caner was concerned that a convicted felon that he had never met (Jason Smathers—the other defendant in the Texas case) and Mr. Autry were using his works in their

entirety without his permission. In *Fogerty*, the Supreme Court analyzed the issue of whether to treat prevailing plaintiffs differently or alike and addressed this motivation factor. *See Fogerty*, 510 U.S. at 532 n.17. The *Fogerty* Court cited *Cloth v. Hyman*, 146 F. Supp. 185, 193 (S.D.N.Y. 1956), which discussed this factor by saying "[i]t is proper to award fees to a prevailing defendant when a copyright action is brought in bad faith, with a motive to 'vex and harass the defendant' or where plaintiff's claim utterly lack's merit."

Here, Dr. Caner brought this suit to have these two lengthy and entire videos removed from the Internet. Mr. Autry makes the claim time and time again that the removal of the videos was motivated to only suppress criticism, but if that were the primary case, then Dr. Caner would have gone on a crusade to remove all videos of himself from the Internet from the scores of individuals that have posted his videos. Here, all he has done is sought to remove the videos that are lengthy, that disseminate all of his lecture content, and are exactly verbatim of what he speaks on across the country. Dr. Caner has sought to protect the interests of his teaching and speaking livelihood by seeking the removal of the only videos that have been posted—in their entirety—to the Internet. Dr. Caner has had no prior knowledge or relationship with Mr. Autry and has no desire to, in bad faith, vex and harass him. This suit was brought in good faith with no intent to harass the parties.

Additionally, Mr. Autry makes a great deal out Caner's settlement discussions. Mr. Autry states that Dr. Caner sought o have all of Dr. Caner's family sign non-disparagement agreements as a part of the settlement, and that this is evidence of improper motivation. When these settlements were taking place, Dr. Caner—not trusting that Mr. Autry would uphold his end of the settlement—feared that Mr. Autry would repost the videos under different names, namely those of his wife and children. It was not Dr. Caner's intent to bind Mr. Autry's children; it was

Dr. Caner's intent to have Mr. Autry agree to the fact that he wouldn't repost the videos under the names of his family. These discussions were fixated upon the goal of having the videos in question removed. As for the "informal interrogatories" that Mr. Autry has pointed to, these were issued in hopes of monitoring these anonymous individuals' websites after a hopeful agreement was executed. These names were requested to prevent the same videos from being reposted under other users who also had posted content about Caner.

Mr. Autry also cites cases that he uses to prove that this case was brought with an inappropriate motive—both cases are easily distinguishable. First, Mr. Autry attempts to use *Religious Tech. Ctr. v. Lerma*, 908 F. Supp 1362, 1368 (E.D. Va. 1995), for the proposition that an award attorney's fees was based on the stifling of criticism. In *Lerma*, a newspaper company printed a "*de minimis*" excerpt from the plaintiff's works. *Id.* The *Lerma* court did discuss criticism, but Mr. Autry left out the relevant aspects of the path that the court used to make its decision. In *Lerma*, the court noted the that members of losing party had made comments about using copyright litigation to:

> Harass and discourage rather than to win. The law can be used very easily to harass and enough harassment on somebody who is simply on the thin edge anyway, well knowing that he is not authorized, will generally be sufficient to cause his professional decease. If possible, of course, ruin him utterly.

*Id.* Conveniently leaving this description out, Mr. Autry has attempted to use this case as factually analogous. In reality, the *Lerma* court based its fee award on the fact that the copied work was "so *de minimis* that [the *Lerma* court] finds that no reasonable copyright holder could have in good faith brought a copyright infringement action." *Id.*[2] Here, this

---

[2] The *Lermer* case is also distinguishable because the court gave weight to the fact that defendant was a public media outlet. The court stated, "Although there are limits beyond which the media may not go, even in the interests of news gathering and reporting, this case does not come

case is factually distinguishable from *Lerma* in that the *entire* portion of Dr. Caner's work was reproduced, not merely a *de minimis* portion of it.

Next, Mr. Autry oddly points to a California case, *Mattel v. Walking Mt. Productions*, 2004 U.S. Dist. LEXIS 12469, *7 (C.D. Cal. June 21, 2004) and uses the proposition that the case is unreasonable because the Plaintiff and his counsel are sophisticated parties and that—because of their sophistication—"it is highly unlikely that . . . either of them would have thought this case reasonable." *See* Dkt. 67 at 8–9. This is an odd stretch—using the fact that Dr. Caner is a sophisticated party and arguing that he thus should have known that his case was unreasonable. Here, Dr. Caner sought to protect the content of his work from unauthorized distribution.

The last case that Mr. Autry attempts to use to argue Dr. Caner's unreasonableness is the case of *Bond v. Blum*, 317 F.3d 385, 397 (4th Cir. 2003). This case is about a father that had written an autobiography entitled, *Self–Portrait of a Patricide: How I Got Away with Murder. Id.* at 385. In this case, during child custody proceedings, a father sought to stop his ex-wife from getting the autobiography manuscript admitted into evidence. *Id.* The autobiography manuscript contained a detailed description of how the father had bludgeoned one his parents to death with a hammer. *Id.* Once the wife moved to admit the manuscript, the father sought copyright protection and objected to its admission. *Id.* In the copyright suit—*Bond v. Blum*—it was argued that the suit was unreasonable because it was clearly brought to suppress and to defeat the evidentiary

---

anywhere near those limits. Therefore, an award of reasonable attorneys' fees is appropriate and granted." *Id.*

motion. *Id.* The court ruled that this use was a fair use and that his copyright claim was "frivolous" and that the fair use determination was not a "close one." *Id.*

Here, Mr. Autry is arguing vehemently that Dr. Caner's sole motivation in bringing the claim is to suppress criticism and is thus unreasonable. In *Blum.* The father was seeking to block the wife's use of the relevant information only after it was being admitted to be used against in a judicial proceeding. Here, Dr. Caner brought this suit motivated by the prospect of protecting the content of his video lectures. Unlike the father in *Bond*, Dr. Caner was not abusing the Copyright Act to evade adverse legal consequences or to hide the content from a judicial forum.

### 2. Attorney's fees should not be awarded because this suit is not frivolous.

As stated in the Original and Amended Complaint, this is a suit that originated by way of takedown notices as articulated under the Digital Millennium Copyright Act (DMCA). *See* 17 U.S.C. § 512 (2012). Under the DMCA, precise steps are provided for an individual to assert what they believe to be their copyright interests in a given case. *See* 17 U.S.C. § 512(g) (2012). The DMCA is a safe harbor for Internet service providers, like YouTube or Viddler, and provides instructions for a potential copyright holder to get the allegedly infringing material removed from the service provider. *Id.* The DMCA's process requires the potential copyright holder to send a "takedown" notification to the service provider, and then the service provider takes down the material while simultaneously notifying the user (that posted the content) that it has been removed. *Id.* The user that posted the content then has the right to file a "counter notification" to the service provider. *Id.* When a service provider receives the counter notification, it is obligated to reinstate the deleted content within ten to fourteen business days unless it is provided proof by the potential copyright holder that a lawsuit has been filed. *Id.* at 512(g)(2)(c).

When the user—that posted the content to the service provider—files a counter notification—the user is statutorily required to consent to litigating the case in his jurisdiction. *Id.* at 512(g)(3)(d).

With this backdrop in mind, Dr. Caner now responds to each of the allegations proffered by Mr. Autry in his *Motion for Attorney Fees*. First, Dr. Caner's case was not frivolous because of the timing involved in this case—i.e., Dr. Caner's Counsel's tactics. Under Federal Rule of Civil Procedure 4(m)—Time Limit for Service—a defendant must be served within 120 days of the filing of the Complaint. Under the DMCA, a plaintiff seeking to protect their perceived copyright interests is required to file suit within a ten to fourteen day window or the work will be reposted to the Internet on the service provider's website. Because of the short time limit to file—and the concomitant 120 day window provided by Rule 4—Dr. Caner filed the suit, explored his legal options during the 120 day time limit, filed his copyright applications, amended his Complaint (Dkt. #13) to reflect the registration with the Copyright Office, and then served Mr. Autry. Furthermore, there is no legal requirement for how long a work is to be registered with the Copyright office before a complaint can be filed and served—the Copyright Act merely requires that the work be registered.

As to Mr. Autry's contention regarding Dr. Caner's counsel's tactics, none of Mr. Autry's arguments should have merit here. Dr. Caner's timing in filing the suit—from the time that the videos were posted to YouTube to the time that the videos were removed—was reasonable because he did not learn of the video postings—the videos that were posted in their entirety— until well after they were posted. Also, Mr. Autry argues that the delay in Dr. Caner's counsel obtaining his *pro hac vice* admission to this court warrants an award of fees. Dr. Caner's counsel apologizes to the Court for this delay. Dr. Caner's counsel had local counsel lined-up, contacted the court to indicate that counsel was lined up, and then was informed that a conflict had arisen

and the local counsel could not help. Counsel for Dr. Caner finally found local counsel, worked with him to obtain ECF registration, and applied within the extended time limit. This delay caused Mr. Autry no fees and should not be considered as a basis for a fee award.

> **3. Attorney's Fees should not be awarded because there are no needs in the particular circumstances to advance the considerations of compensation and deterrence.**

The purpose of the Copyright Act is "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. CONST. art. I, § 8, cl. 8. Furthermore, when a plaintiff brings an objectively reasonable claim—to protect their perceived "exclusive right" for a limited time, "[t]hese Plaiintiffs should not be deterred from bringing future suits to protect copyrights." *Virgin Records Am., Inc.*, 512 F.3d 724, 727 (5th Cir. 2008).

Awarding fees in a case where a professional is seeking to protect the unwarranted publication of his entire works seeks to chill the effect of the copyright act instead of promote it. *See Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC*, 4:10CV129, 2012 WL 48027 (E.D. Va. Jan. 9, 2012). Dr. Caner was seeking to protect the entirety of the work that he has written books on, travels and lectures on, and is a part of his family heritage. In seeking to protect his work, his copyright claims were not such a flagrant attempt to abuse copyright law that they merit the strong medicine of awarding the prevailing party attorney's fees and costs. To award attorney's fees here, without evidence of bad faith or frivolity, would pave the way for granting such fees as a matter of course whenever a copyright holder-plaintiff is defeated on summary judgment. This sweeps too far, and could potentially chill litigation properly brought to enforce copyright protections. *Id.*

B. **The Requested Fee Amounts Are Unreasonable.**

Not only do district courts have the discretion to award attorney's fees, district courts also have the discretion to adjust the fee amounts so they are reasonable. *See, e.g., Allora, LLC v. Cambridge Builders of Johnston Cnty., Inc.*, 532 F. App'x 349, 352 (4th Cir. 2013) (reducing Lodestar by one-third); *Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.,* CIV.A. 1:07-CV-491, 2009 WL 3423848 (E.D. Va. Oct. 16, 2009) (reducing the Lodestar by 40%); *Randolph v. Dimension Films, Inc.*, 634 F. Supp. 779, 801 (S.D. Tex. 2009) (reducing the Lodestar by 85% on a case dismissed by a Rule 12(b) motion).

Here, Counsel for Autry is contending that he has spent 115.5 hours on this case. This is an exorbitant amount of time for a case that was 1) worked on with a co-counsel (counsel for Mr. Smathers), 2) required no in-court hearings or travel because it was all carried out via motion practice and over the telephone, and 3) was resolved on a motion to dismiss before an Answer was even filed.

Additionally, Mr. Autry admits that he is not familiar with copyright actions. Because of this, he had to take an excessive amount of time to become acquainted with the issues presented. It is ludicrous that there are 115 legitimate hours when there is a supporting attorney and support staff assisting working merely through motions to dismiss. Another factor necessitating the reduction of rates in this case is the fact that Mr. Autry has not paid for his brother's services in this case. Mr. Autry assumed this case *pro bono*, and did not charge any fees whatsoever. A fee award is not proper because Mr. Autry has suffered no financial harm as a result of this case.

Lastly, Dr. Caner is also not in a financially suitable position to handle the fees described above.[3] He recently moved across the country, started a new job within this past year, and is supporting his family. In light of these considerations, if this Court is going to award fees in this matter, Dr. Caner respectfully asks this court to reduce the fees accordingly.

**C. Conclusion**

Dr. Caner respectfully asks this court to deny the Defendant's Motion for Attorney Fees. Here, in seeking to protect his work, his copyright claims were not such a flagrant attempt to abuse copyright law that they merit the strong medicine of awarding the prevailing party attorney's fees and costs. Awarding fees in a case involving a professional that is seeking to protect the unwarranted publication of his entire works seeks to chill the effect of the copyright act instead of promote it.

Respectfully Submitted,

Dr. Ergun Caner

By _____
Of Counsel

David C. Gibbs III
Gibbs Law Firm, P.A.
2648 FM 407, Suite #240
Bartonville, TX 76226
(727) 362-3700
dgibbs@gibbsfirm.com
Texas Bar No. 24026685
Admitted to Practice *Pro Hac Vice*

---

[3] Nor is he able to financially assume the fees that are being sought against him in Texas. Taken together with fees here in Virginia, these fees could impose a penalty of almost $50,000 on Dr. Caner for seeking to protect the content of his work (that was posted in its entirety—two nearly hour-long video lectures).